Ronald YEADON, et al., individually and on behalf of others similarly situated, Plaintiffs,

v.

NEW YORK CITY TRANSIT AUTHORITY, et al., Defendants.

Eric MOORE and Uriel Hart, Plaintiffs,

v.

NEW YORK CITY TRANSIT AUTHORITY, et al., Defendants.

Harry MENDEZ, Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORITY, et al., Defendants.

Ronald SMITH, Plaintiff,

v.

Robert MORGENTHAU, et al., Defendants.

Bennie CLOWERS II and Darrell Williams, Plaintiffs,

v.

Robert MORGENTHAU, et al., Defendants.

Nos. 87 Civ. 6450(RO), 88 Civ. 1132(RO), 88 Civ. 1131(RO), 87 Civ. 8740(RO) and 87 Civ. 9093(RO).

United States District Court, S.D. New York.

Aug. 4, 1989.

Lankenau Kovner & Bickford, Richard D. Emery, New York City, for plaintiffs Yeadon, et al., for plaintiffs Moore and Hart, and for plaintiff Mendez.

John P. Rudden, New York City, for plaintiff Smith and for plaintiffs Clowers and Williams.

Albert C. Cosenza, Vice President and Gen. Counsel, New York City Transit Authority, Brooklyn, for defendants Transit Authority, Meehan, Rogan, Moraff and Donnelly; Steve S. Efron, of counsel.

Agulnick & Gogel, New York City, for defendants Iannacone and McDermott.

Kliegerman & Friess, New York City, for defendants Lacey and Corkran.

Robert M. Morgenthau, Dist. Atty., New York City for defendants Morgenthau and Holmes; Mark Dwyer, Mark Frazier Scholl, Asst. Dist. Attys., of counsel.

## OPINION AND ORDER

OWEN, District Judge:

This class action,[1] consolidated with other cases,[2] arises out of an apparent pattern of seemingly race-based false arrests and prosecutions initiated by at least four New York City Transit Authority ("NYCTA") police officers from 1983 to 1987.[3] According to plaintiffs, the officers, who sought to improve their arrest records in order to secure promotions and other benefits, routinely accused innocent, disproportionately black and hispanic subway riders of petty but humiliating crimes, made racist remarks while arresting them, and initiated prosecutions against them. Often, plaintiffs claim, the officers misrepresented to the accused that another passenger had complained to the officer, or that another officer had witnessed the offensive behavior; later, to facilitate prosecution, the officers attempted to secure false affidavits from these supposedly complaining witnesses. Against the officers, the class and other plaintiffs allege false arrest, conspiracy to violate, and substantive violations of, their civil rights.[4] Additionally, they claim that the officers are liable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964.

All plaintiffs also name as defendants the NYCTA and certain NYCTA supervisory officers ("supervisor defendants"),[5] alleging that departmental policy and practice aggravated the officers' unconstitutional behavior and that, in 1984, the supervisor defendants became aware of the false arrest pattern but suppressed their information, causing plaintiffs further harms. Plaintiffs submit the affidavit of Thomas Dargan, an NYCTA investigator, who relates that, starting in November, 1983, the NYCTA and supervisor defendants had notice and documentary proof that the four officers' records of arrests showed signs of

1. *Yeadon, et al. v. NYCTA, et al.,* 87 Civ. 6450 (RO).

2. *Smith v. Morgenthau, et al.,* 87 Civ. 8740 (RO); *Clowers v. Morgenthau, et al.,* 87 Civ. 9093 (RO); *Mendez v. NYCTA, et al.,* 88 Civ. 1131 (RO); *Moore v. NYCTA et al.,* 88 Civ. 1132 (RO).

3. The officers, William Corkran, Edward Lacey, Alphonse Iannacone and Mary McDermott, worked together. In March, 1989, Iannacone and McDermott were found guilty of participation in a criminal civil rights conspiracy. Lacey and Corkran have not been indicted. One plaintiff, Mendez, names as defendants two other arresting officers, Thomas Lynch and Louis Billera.

4. Against these defendants, plaintiffs assert claims based on 42 U.S.C. § 1981, which secures equal rights under the law, and based on 42 U.S.C. § 1983, which provides a cause of action for deprivation of civil rights under color of law. The § 1983 claims sound in false arrest and malicious prosecution, which are also asserted as pendent state law claims. Additionally, plaintiffs pursue civil rights conspiracy claims under 42 U.S.C. § 1985, which forbids joint action to obstruct justice or to impede civil rights.

5. The NYCTA supervisors named are James Meehan, John Rogan and Paul Moraff. Meehan is Chief of the Transit Authority Police Department, and Rogan his Deputy Chief. Moraff is Captain of District 4 of the Transit Authority Police Department, the district in which the four officer defendants worked.

serious irregularity.[6] According to Dargan, the supervisor defendants belatedly ordered an investigation of the officers' arrests, but purposefully avoided contacting the arrestees because civil suits might follow. In the course of defending against plaintiff Vincent's prior state court suit for false arrest, the NYCTA allegedly dodged discovery requests that would have disclosed the false arrest scheme.

Although an NYCTA investigative report ultimately confirmed the pattern of arrest irregularity, the officers' apparent perjury, and the NYCTA's and District Attorney's slow response to preliminary evidence of abuse,[7] no action was taken to discipline the officers or to alter the treatment of prior or subsequent arrestees, according to Dargan. The District Attorney's office declined to prosecute the officers, and, with certain alleged deviations from standard NYCTA procedure, the investigation was terminated. Allegedly, Dargan made further efforts to prompt action on the report, but NYCTA officers sought to silence him. Thus frustrated, Dargan read with interest news of Ronald Yeadon's early suit for false arrest, and contacted Yeadon's attorney.

According to plaintiffs, the supervisor defendants' failure to take any action on the report's findings, and their efforts to keep plaintiffs from finding out what the report contained, constituted a conspiracy to deny plaintiffs their civil rights.[8] Additionally, two non-class plaintiffs sue the Manhattan District Attorney and his deputy, claiming that their continued prosecution of plaintiffs in the face of evidence of the false arrest pattern, and their handling of that and other exculpatory evidence in the course of the prosecutions, made them members of the conspiracy to deprive plaintiffs of their rights. Although the class and other plaintiffs have not named the prosecutors as defendants, they do allege that the District Attorneys office's continued prosecution of these cases and denial of requests for exculpatory evidence furthered the infringements on plaintiffs' rights.

## STATUTE OF LIMITATIONS DEFENSES

 All defendants having moved, under Rule 12(b)(6), to dismiss some claims on statute of limitations grounds, plaintiffs submitted affidavits and other materials calculated to convert defendants' move for dismissal into motions for summary judgment. Such a conversion, explicitly sanctioned under the Rules, is appropriate so long as both sides have notice that the court will consider extrinsic matters, and have an opportunity to present supporting materials in response. *See Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir.1980). Because defendants had such notice and opportunity to respond, and because their reply papers and other submissions address the materials set forth in plaintiffs' affidavits, these motions to dismiss are properly converted to summary judgment motions. *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986).

 The defendants argue that the statute of limitations bars these claims,[9] because the triggering events occurred during 1983 and 1984, and plaintiffs failed to

---

6. Dargan asserts that the Manhattan District Attorney's office notified the NYCTA of dubious similarities in the officers' cases, including the arrestees' lack of prior arrest records, and noncooperation or contradictory statements from complaining witnesses.

7. These findings were made part of a preliminary report to defendant Meehan in May, 1984, and were finalized in a report dated July 9, 1984.

8. Plaintiffs Williams, Smith and Clowers, as non-class plaintiffs in separate cases, also pursue RICO claims against the supervisory defendants. *See infra* p. 213.

9. The officers do not move to dismiss as untimely the § 1981, § 1983, § 1985 claims of plaintiffs Yeadon, Lewis, Harris or Turturro. They do so move against all other plaintiffs. The supervisor defendants move to dismiss the § 1983 claims of Yeadon, Mitchell, Reale, Vincent, DelVecchio, Moore, Hart, Mendez, Smith and Williams.

file suit until late 1988.[10] Under appropriately borrowed New York law, the statute of limitations period applicable to § 1983 and § 1985 actions is three years. *Okure v. Owens,* —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). For § 1986 claims, Congress specifically provided a one year limitations period. 42 U.S.C. § 1986 (West's 1988). Civil RICO claims must be brought within four years of RICO injury. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987).

 Ordinarily, many of plaintiffs' actions would be time-barred;[11] however, plaintiffs may avoid dismissal of their actions because the defendants' alleged fraudulent conduct may well have deprived plaintiffs of information essential to the formulation of their claims. Under federal accrual principles, the statute of limitations only begins to run when the plaintiff knew or should have known the fact of his injury and its cause. *See Kubrick v. United States,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Barrett v. United States,* 689 F.2d 324, 327 (2d Cir.1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). Additionally, if a defendant has concealed facts that are critical to a cause of action, then the statute of limitations is tolled until plaintiff discovers or with reasonable diligence should have discovered his claim. *Keating v. Carey,* 706 F.2d 377 (2d Cir.1983). A plaintiff with knowledge of one claim but deprived of information critical to another claim may still invoke these tolls to save the claims about which he could not have known. *See Barrett v. U.S.,* 689 F.2d at 329–30; *see also Hobson v. Wilson,* 737 F.2d 1, 33–34 (D.C.Cir.1984); *Richards v. Mileski,* 662 F.2d 65, 70 (D.C.Cir.1981). Ordinarily,

whether or not a plaintiff knew or should have known the critical facts of the challenged claim is a question of fact, not susceptible of resolution on a motion for summary judgment. *See Robertson v. Seidman & Seidman,* 609 F.2d 583, 593 (2d Cir.1979); *Guccione v. U.S.,* 670 F.Supp. 527, 537 (S.D.N.Y.1987), *aff'd,* 847 F.2d 1031 (2d Cir.1988).

Plaintiffs have introduced sufficient evidence to create issues of fact as to the availability of deferred accrual or a fraudulent concealment toll on all of their claims. As to each claim against the officer defendants, plaintiffs have made possible a finding that: 1) the defendant concealed critical information from the plaintiff; 2) the concealment prevented plaintiff from discovering his claim within the limitations period; and 3) plaintiff could not have discovered his claim in the exercise of reasonable diligence. *Donahue v. Pendleton Woolen Mills,* 633 F.Supp. 1423 (S.D.N.Y.1986).

Plaintiffs' pleadings and supporting materials show that the arresting officers may have concealed critical information from each plaintiff, preventing discovery of claims, even in the exercise of reasonable diligence. The officers repeatedly represented to plaintiffs that complaining witnesses had initiated the arrests, and that the witnesses would appear in court to prosecute. These misrepresentations may have prevented plaintiffs from discovering that they had been falsely arrested, because, while they knew they were innocent, they nevertheless could believe that their arrests were the result of the claimed witnesses' misperceptions and consequently were supported by probable cause. *Cf. Deary v. Three Unnamed Police Officers,* 746 F.2d at 200 (Higginbotham, Jr., J., con-

10. There is some dispute as to whether claims asserted in the second amended *Yeadon* complaint, on behalf of newly named and unnamed class members, would relate back to earlier complaints for statute of limitations purposes. Defendants do not dispute, however, that all claims were effectively interposed on January 19, 1988, at the latest. For the purposes of this discussion, January 19, 1988 will serve as the date on which plaintiffs commenced the challenged actions.

11. Under the general rule, a § 1983 action based on false arrest accrues at the time of the arrest. This is so because the injury occurs then, and because the plaintiff ordinarily has immediate knowledge that he has been falsely accused. *See Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *see also Davis v. Harvey,* 789 F.2d 1332 (9th Cir.1986); *Deary v. Three Un-named Police Officers,* 746 F.2d 185, 193–4, 197 n. 16 (3d Cir.1984) (citing cases).

curring and dissenting) (proposing different accrual rules for false arrest claims and for § 1983 claims of arrest without probable cause.) Witness misperception may have seemed particularly plausible to the arrestees because the cramped conditions of New York City subways invite erroneous perception of "sexual abuse," offensive rubbing, and "jostling," movement of the hand toward a pocket or purse of another, the two crimes of which every plaintiff was accused. Because plaintiffs may not have had any information to arouse suspicion about the basis for their arrests, their causes of action would not have begun to run until they acquired that information, in November, 1987. *See Sandutch v. Muroski,* 684 F.2d 252, 254 (3rd Cir.1982) (per curiam).

The officers' fabrication of the existence of complaining witnesses to create the appearance of probable cause to arrest taken together with the alleged conspiracy to conceal the false arrest pattern also justifies either equitable tolling or deferred accrual of the statute of limitations on all claims against the supervisory defendants. As in *Barrett,* 689 F.2d at 329, plaintiffs knew of their injuries, but lacked critical facts about who had inflicted them and for what reason. Plaintiffs' assertion of claims against the supervisory defendants and the NYCTA depended entirely on their discovery of a pattern or practice of arrest misconduct, or of a policy conducive to or approving of such misconduct. *See Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Without awareness of the falsity of their own arrests, and allegedly kept from discovering the pattern of which those arrests were a part, plaintiffs could not have discovered that they had claims against the NYCTA and the supervisory officers. *Hohri v. U.S.,* 782 F.2d 227 (D.C.Cir.1986); *Barrett,* 689 F.2d at 330; *see also Hobson,* 737 F.2d at 33–34; *Richards,* 662 F.2d at 70. Moreover, plaintiffs have shown preliminarily that they exercised sufficient diligence by making various requests for exculpatory material and other discovery; it was defendants' alleged suppression that made plaintiffs' efforts fruitless.

Thus, plaintiffs have created issues of fact as to whether, under the circumstances, their claims remain timely, because "it is illogical to require a party to sue the government ... at a time when the Government's responsibility in the matter is being suppressed in a manner designed to prevent the party, even with reasonable effort, from finding out about it." *Barrett,* 689 F.2d at 330. Because plaintiffs' allegations, if proved, would justify either tolling for fraudulent concealment or delayed accrual until November, 1987, and because plaintiffs commenced their actions by January 19, 1988, the NYCTA and supervisors' motions to dismiss on statute of limitations grounds are denied.

■ Although outstanding issues of fact as to plaintiffs' knowledge or reason to know of their causes of action precludes summary judgment, the absence of a fact issue as to one plaintiff, Vincent, requires special treatment of his claims. Vincent brought and settled a state court action for false arrest and malicious prosecution against the NYCTA, prior to the commencement of this action, and that suit demonstrates conclusively that Vincent knew that he had been falsely arrested. As a result, the statute of limitations bars Vincent's state law tort and § 1983 claims against his arresting officer and against the NYCTA, to the extent that those claims sound in false arrest, without more. The remainder of Vincent's claims, which turn on additional allegations of racial enmity, conspiracy and ratification of unconstitutional behavior, may remain viable, however, because the facts underlying those claims were not necessarily known at the commencement of the prior suit.

■ Although the statute of limitations does not bar all of Vincent's claims, the settlement agreement poses further obstacles to those that remain. The settlement agreement took the form of a general release of the NYCTA in consideration of $3,500.00. Defendants assert the settlement as a bar to this suit, but Vincent counters that because defendants allegedly

fraudulently induced Vincent to settle, on the basis of misrepresentations and concealment of the facts surrounding his arrest, the settlement does not bar this suit.

 If a settlement is procured through fraud, it will not serve as a defense to subsequent actions. *See Slotkin v. Citizens Cas. Co. of New York,* 614 F.2d 301, 312 (2d Cir.), *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980); *Cresswell v. Sullivan & Cromwell,* 668 F.Supp. 166, 171 (S.D.N.Y.1987). To avoid the bar of settlement, plaintiff bears the burden of proving fraud: knowing misrepresentation or concealment of a material fact, on which plaintiff relied, resulting in injury. *Barrett v. United States,* 660 F.Supp. 1291, 1309 (S.D.N.Y.1987). Such intentional concealment may be found where the defendant's decision to settle appears calculated to avoid plaintiff's discovery of the true cause or extent of injury. *Id.* If fraud is thus proved, the plaintiff must then elect remedies: he must either seek rescission of the settlement and sue again on his original claims, or bring a claim for the fraud in connection with the settlement. *Slotkin,* 614 F.2d at 312; *Barrett v. United States,* 651 F.Supp. 615, 618 (S.D.N.Y.1986). Whether he elects to pursue his new fraud claim or to rescind and pursue his original claims, the damages will reflect the value of the original claims. *Barrett,* 651 F.Supp. at 618–19.

At this stage, Vincent has proffered sufficient evidence of misrepresentations in connection with the prior suit to avoid dismissal on the basis of the settlement. Vincent alleges that, in addition to the defendants' fraudulent concealments at the time of his arrest and aborted prosecution, the NYCTA's conduct during discovery and settlement of the state court action deprived him of the information he needed to fully pursue his claims. Specifically, Vincent claims that the NYCTA persistently resisted his discovery demands, requiring the court's intervention, on the subject of whether there had been any departmental investigation of Vincent's arrest; according to Vincent, settlement talks began when the court finally ordered the NYCTA to satisfy this request. Moreover, Vincent claims, the NYCTA dishonestly denied knowledge of the complaining witness' telephone number and mailing address, while the NYCTA's investigation of the officers, proceeding simultaneously, included a call to that witness. These tactics, if true, may have fraudulently induced Vincent to settle his claim against the NYCTA, precluding dismissal of Vincent's claims.

Therefore, Vincent's claims against the NYCTA may not be dismissed at this stage. At some time hereafter, however, Vincent will have to substantiate his claim of fraud in connection with the settlement agreement, and then elect his remedies.

### Substantive Defenses: Failure to State Certain Claims

The defendants also challenge the substantive sufficiency of some of plaintiffs' pleadings. First, the supervisor defendants move under Rule 12(b)(6) to dismiss all plaintiffs' § 1985 and § 1986 claims. These claims charge the supervisor defendants with participation in, and failure to prevent, the officers' racially motivated conspiracy to conceal information regarding the false arrests so as to deprive plaintiffs of their constitutional right of access to the courts. Defendants challenge the sufficiency of these claims on three grounds: that plaintiffs have not properly alleged an agreement to pursue an unlawful objective or any overt act in furtherance of that pursuit; that plaintiffs have not alleged sufficient facts to support the required allegation of racial animus; that qualified immunity protects defendants from suit for their allegedly conspiratorial actions; and, finally, that no conspiracy is possible between defendants because when agents of a single corporate entity, such as the NYCTA, jointly act for the purposes of that entity, they do not act as "two or more persons" sufficient to constitute a conspiracy.

 Plaintiffs have properly stated § 1985 and § 1986 claims, which may not be dismissed at this stage on the basis of defendants' qualified immunity or their intracorporate relationship. Plaintiffs have

alleged that the supervisor defendants conspired to suppress information critical to plaintiffs' causes of action, interfering with plaintiffs' right of access to the courts. Such concealment may rise to the level of a constitutional violation, and plaintiffs have alleged such facts as would entitle them to relief. *Barrett v. United States,* 798 F.2d 565 (2d Cir.1986); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1262 (7th Cir.1984); *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983). With respect to racial animus, the fact that some of the plaintiffs are white does not foreclose a finding that race was a motivating factor in the alleged conspiracy, and that the conspiracy victimized them as well. *See Novotny v. Great American Federal Savings and Loan Ass'n.,* 584 F.2d 1235, 1244–45 (3d Cir.1978), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Peck v. United States,* 470 F.Supp. 1003 (S.D.N.Y.1979). Plaintiffs' allegations that the arresting officers characteristically uttered racial epithets and accosted members of racial minorities with markedly disproportionate frequency are sufficient to satisfy the racial animus component of their § 1985 pleadings against all defendants. *See Bell,* 746 F.2d at 1259–60.

■ . The right of access to the courts, free from racially motivated interference, having been well established at the time of defendants' alleged conspiracy, defendants may not invoke qualified immunity at this time. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Barrett,* 798 F.2d at 574–75. Neither does the defense that a single corporation and its employees cannot conduct a conspiracy shield defendants from potential liability under either § 1985 or § 1986, because plaintiffs have adequately alleged a series of separate discriminatory acts by the corporate entity and its agents. *See Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D.Pa.1974) (single business entity defense not grounds for dismissal of complaint which alleges repeated, continuing discriminatory episodes); *Stathos v.*

*Bowden,* 728 F.2d 15 (1st Cir.1984) (same); *but cf., Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir.1972) (corporation's and agents' single act of discrimination not conspiratorial conduct). Moreover, because plaintiffs have adequately alleged that each defendant possessed independent, personal conspiratorial purposes, the defense does not apply. *See Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594 (5th Cir.1981); *Johnston v. Baker,* 445 F.2d 424 (3d Cir.1971). Accordingly, defendants' motions to dismiss plaintiffs' § 1985 and § 1986 claims are denied.

■ The officer defendants do not challenge the sufficiency of plaintiffs' civil rights claims, but they do move to dismiss plaintiffs' claims asserted under RICO, 18 U.S.C. § 1964(c). In essence, plaintiffs' RICO claims allege that the officers conducted an enterprise, the NYCTA, through a pattern of racketeering activities, consisting of false arrests and prosecutions, and false mailings to and from witnesses, so as to injure plaintiffs in their business or property. Defendants attack plaintiffs' RICO claims for failure to allege injuries to the kind of property protected under the mail and wire fraud statutes.

To satisfy the mail and wire fraud requirements, plaintiffs must allege that defendants used the mails in furtherance of a scheme to defraud, or for obtaining money or property by means of falsehoods. *See* 18 U.S.C. §§ 1341, 1343. The scheme to defraud must impinge upon "property rights" more substantial than "intangible rights, such as the right to have public officials perform their duties honestly." *McNally v. United States,* 483 U.S. 350, 358, 107 S.Ct. 2875, 2880, 97 L.Ed.2d 292, 301 (1987). However, protected property rights, broadly defined, may include intangibles. *Carpenter v. U.S.,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).

Plaintiffs have adequately alleged all mail and wire fraud elements. The defendants' use of the mails furthered their alleged scheme to obtain money and property in the form of job promotions, benefits and other rewards. These fraudulently obtained rewards allegedly cost the govern-

ment money it would not otherwise have paid, distinguishing this case from *McNally*. *See U.S. v. King*, 860 F.2d 54 (2d Cir.1988) (per curiam); *Ingber v. Enzor*, 664 F.Supp. 814 (S.D.N.Y.1987), *aff'd*, 841 F.2d 450 (2d Cir.1988). Because the defendants allegedly schemed to obtain such clearly cognizable property, for the purposes of this motion it is unnecessary to decide whether plaintiffs' monetary losses arising out of their arrests would also satisfy statutory requirements, or whether recent statutory amendments, broadening the definition of property interests, should govern this case. Accordingly, the motions to dismiss plaintiffs' RICO claims against the officers are denied.

 Unlike the other plaintiffs, Smith and Clowers, proceeding separately, assert RICO claims against the supervisory defendants and the Manhattan District Attorney, Robert Morgenthau, and Robert Holmes, Chief of the District Attorney's office Trial Division ("prosecutor defendants"). These plaintiffs also include the prosecutor defendants in the alleged § 1985 conspiracy to deprive plaintiffs of their civil rights. Relying on the information provided by inspector Dargan and set forth in the materials submitted in the *Yeadon* action, these plaintiffs allege that all of these defendants had knowledge of and directed the officers' unlawful activities, and that the prosecutor defendants conspired to continue knowingly unwarranted prosecutions. The NYCTA, supervisor and prosecutor defendants all challenge the sufficiency of the pleadings of both the § 1985 and RICO claims; additionally, the prosecutor defendants argue that the doctrine of absolute prosecutorial immunity shields them from suit on these claims.

These complaints lack the specificity necessary to survive these motions, as they state generally defendants' alleged "personal knowledge" of the arrest irregularities, but do not adduce any facts indicative of such knowledge in the handling of these plaintiffs' cases. Unlike the other plain-

tiffs, who alleged specifically, case by case, that the prosecutors knew that the supposed complaining witnesses had contradicted the officers' version of the facts or had refused to cooperate in the prosecutions, and that the supervisory defendants took specific steps to conceal from plaintiffs their causes of action, the *Smith* and *Clowers* plaintiffs state no facts that could support knowledge or acts in furtherance of the scheme on the part of these defendants. Accordingly, these claims are dismissed with leave to replead if, consistent with Rule 11, plaintiffs can allege facts in support of these claims. To that more detailed complaint, the defendants may address their motion to dismiss on immunity or any other grounds.

 Lastly, the NYCTA's motion to dismiss for failure to meet notice of claim requirements applicable to suits against state agencies is held in abeyance. Because plaintiffs presently pursue, in state court, a waiver of those requirements, this court will refrain from ruling on this issue at this time, in the interest of "[w]ise judicial administration, giving regard to conservation of judicial resources...." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765, 779 (1983). Similarly, certain plaintiffs' concurrent efforts to vacate their guilty pleas,[12] pursuant to a state statutory scheme, justify postponement of a determination as to whether those pleas preclude any or all of plaintiffs' claims here.

Accordingly, all defendants' motions to dismiss are denied, except those addressed to the sufficiency of the *Smith* and *Clowers* pleadings, and those held in abeyance.

So ordered.

---

12. Plaintiff Burns already successfully had his plea vacated in state court. Plaintiffs Moore and Smith still await vacatur of their pleas.