Dhoruba Bin **WAHAD**, formerly known as Richard Dhoruba Moore, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**No. 75 Civ. 6203 (MJL).**

United States District Court, S.D. New York.

Jan. 29, 1993.

Robert J. Boyle, Elizabeth M. Fink, Brooklyn, NY, for plaintiff.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., Diana Hassel, Asst. U.S. Atty., O. Peter Sherwood, Corp. Counsel of City of New York by Robert Trachtenberg, Asst. Corp. Counsel, New York City, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court are objections to two Reports and Recommendations from a Magistrate Judge, pursuant to Fed.R.Civ.P. 72, by Plaintiff Dhoruba Bin Wahad ("Plaintiff") and by Defendants. Plaintiff moved for sanctions and attorneys' fees and expenses pursuant to Fed.R.Civ.P. 37(b). Defendants Federal Bureau of Investigation ("FBI"), Attorney General of the United States, Director of the FBI, and "Richard Roe", representative of unnamed federal defendants, moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) or summary judgment pursuant to Fed.R.Civ.P. 56. These motions were referred to Magistrate Judge Nina Gershon on April 22, 1988. The Magistrate Judge filed a Report and Recommendation on October 11, 1991 (the "October R & R") in which she advises that Plaintiff's motions be granted and that Defendants' motion be denied. Defendants have filed objections to the R & R pursuant to Fed.R.Civ.P. 72. For the reasons set forth below, this Court adopts the October R & R with modification as to the appropriate sanction.

Also, in a Report and Recommendation filed April 15, 1992 (the "April R & R"), Magistrate Judge Gershon addressed the motions of defendants James Lott and John Higgins, former FBI agents, to dismiss pursuant to Fed.R.Civ.P. 12 or for summary judgment pursuant to Fed.R.Civ.P. 56. In the R & R, the Magistrate Judge recommends that Defendant Lott's motion for summary judgment be granted to the extent of dismissing all common law tort and 42 U.S.C. § 1983 claims, and denied in all other respects. The Magistrate Judge recommends that Defendant Higgins' motion for summary judgment based on lack of personal jurisdiction should be granted. The parties have filed cross-objections to the R & R. For the reasons set forth below, this Court adopts in part the April R & R.

## BACKGROUND

The background of this case has been stated in prior opinions of this Court, and it will now be repeated only in summary. This action was filed on December 10, 1975. Plaintiff's complaint alleged illegal surveillance and initiation of false criminal charges by past and present federal and local officials, both named and unnamed. Plaintiff claims that these actions, directed against him and the Black Panther Party, violated his constitutional rights and rights granted to him under federal statutes. Plaintiff amended his complaint on September 10, 1976, alleging that he was the target of the FBI counter-intelligence COINTELPRO program, and subjected to illegal electronic and physical surveillance by the FBI.

Plaintiff is a former leader of the New York chapter of the Black Panther Party. He was a member of the chapter from 1968 to 1971. In 1973, he was convicted in New York State for the 1971 attempted murder of two New York City police officers, and sentenced to 25 years in prison. In 1990, after serving 19 years in prison, he was released from custody.

Here, Plaintiff claims that the alleged acts of Defendants were committed, even during the time of his incarceration, in an effort to neutralize him as a political spokesperson. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages, for the harm alleged to have been done. Specifically, Plaintiff seeks to enjoin Defendants from illegally opening his mail and monitoring his conversations. He also seeks to prevent Defendants from using and disseminating materials gathered through illegal mail covers, burglaries, and electronic surveillance. Finally, he seeks the return of materials alleged to have been illegally obtained from his possession.

## DISCUSSION

I. *Report and Recommendation of October 11, 1991.*

A. Sanctions.

Among the materials received by the federal Defendants is the Plaintiff's address book. This book was removed from Plain-

tiff's jail cell in 1984 without his knowledge or consent. The importance of this act is that it may shed light on a continuing pattern of misconduct by the Defendants, and support Plaintiff's request for injunctive relief. Defendants contend that all investigations of the Plaintiff ceased in 1974; however, Plaintiff contends that the informant who gave the book to the FBI did so at the request of that agency. Plaintiff seeks discovery from the informant as to these matters. On June 26, 1990, Magistrate Judge Gershon issued an order directing that the FBI provide Plaintiff with the name of the informant who provided it with Plaintiff's address book. This order was affirmed by this Court in an Order dated August 20, 1990.

Plaintiff seeks sanctions against the FBI pursuant to Fed.R.Civ.P. 37 for failure to comply with the discovery orders issued by the Court. The issue before the Court is whether these orders have been violated, and, if so, whether sanctions are appropriate.

Defendants failed to comply with this Court's order. On November 14, 1990, Plaintiff moved for issue-determinative sanctions pursuant to Fed.R.Civ.P. 37(b). FBI Director William Sessions filed an affidavit in opposition to this motion on December 13, 1990. This affidavit contained suggested alternatives to the disclosure of the informant's name, such as an in-camera deposition, written interrogatories, or a deposition by telephone. These alternatives were not suggested until after the orders of the Magistrate Judge and the District Court were issued, and not until after Plaintiff moved for sanctions. The suggestion of alternatives does not change noncompliance with court orders regarding discovery.

█ Issue-related sanctions, granted pursuant to Fed.R.Civ.P. 37(b), are a remedy for failure to comply with an order to permit discovery. The purpose of sanctions is to improve the ability of the party refused discovery to prosecute the action without the information requested, and to improve that party's ability to identify damages suffered. *See In re Attorney General*, 596 F.2d 58, 67 (2d Cir.), *cert. denied*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979). This Court stated in the August 20, 1990 Order that Plaintiff may be able to support his claim of an ongoing pattern of misconduct once the identity of the informant is revealed. 132 F.R.D. 17, 24, August 20, 1990 Order at 20. An appropriate sanction in this case will enable Plaintiff to proceed with his action without the information sought by discovery.

█ Parties must not be permitted to better their position because they have failed to comply with discovery orders. Sanctions ensure that this does not occur. While sanctions are severe measures, they are appropriate particularly in cases such as this where it is the government that disobeys court orders; the government is charged with the enforcement of law and should set examples for others to follow. *National Lawyers Guild v. Attorney General*, 94 F.R.D. 600, 615 (S.D.N.Y.1982) (citing *Perry v. Golub*, 74 F.R.D. 360, 366 (N.D.Ala.1976), and *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir.1980)). "The parties ... must be prepared to adhere to the orders of the court whose assistance they seek, whether or not they agree with those orders." *National Lawyers Guild*, 94 F.R.D. at 616.

█ The Court considers two factors which limit its discretion in imposing sanctions. The United States Supreme Court, in *Insurance Corp. v. Compagnie Des Bauxites*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), delineated these factors. Sanctions "must be 'just,'" and "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* at 707, 102 S.Ct. at 2107. The imposition of sanctions in this case would be "just" because Defendants willfully failed to comply with two orders—one by the Magistrate Judge and one by this Court. Sanctions would need to be fashioned so that they relate to the Plaintiff's "claim" that the FBI requested an informant to provide them with the address book.

Fed.R.Civ.P. 37(b)(2)(A) allows the court to order designated facts to be taken as established in accordance with the claim of the party obtaining the order. The appropriate sanction in this case establishes the following as fact for the purpose of this action:

> In 1984, Plaintiff's address book was taken from his cell without his knowledge or consent by an informant acting at the request of the FBI.

This sanction is not a finding of unlawfulness by the FBI or other federal Defendants, nor is it reflective of a direct investigation of the Plaintiff. Any inferences of misconduct can be rebutted by Defendants. The recommendation of the Magistrate Judge that sanctions be imposed is accepted. The sanction is as modified above.

### B. Costs and Attorneys' Fees.

Plaintiff seeks an award of costs and attorneys' fees pursuant to Fed.R.Civ.P. 37(a)(4) and 37(b)(2). The Magistrate Judge found that Plaintiff is entitled to $28 for photocopying expenses, and $5,250 in attorneys' fees for attempting to obtain sanctions or compliance with the August 20, 1990 order. No objections to these findings were made, and the Court adopts them as to costs and attorneys' fees.

### C. Motion for Summary Judgment.

■ Also before the Court is a motion by the federal Defendants for summary judgment. Summary judgment shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Defendants contend that there was no investigation of Plaintiff in 1984, and that therefore Plaintiff's prayer for injunctive relief is without merit. The Magistrate Judge recommends that this motion be denied because sanctions create an issue of fact which precludes summary judgment.

This Court agrees that there is a genuine issue of material fact in dispute which precludes summary judgment. The imposed sanction creates an inference which favors Plaintiff; this issue requires submission to the finder of fact as to who should prevail on this claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Unresolved is whether the federal Defendants violated Plaintiff's statutory and constitutional rights through a continuing, improper investigation of him. Evidence of this investigation is not "merely colorable," *Id.;* the sanction has established facts sufficient to allow this issue of an unlawful investigation to go to trial.[1] For this reason, the Court adopts the Magistrate Judge's recommendation, and Defendants' motion for summary judgment is denied.

### II. *Report and Recommendation of April 15, 1992.*

In the April R & R, the Magistrate Judge addressed motions by Defendants James Lott and John Higgins, former FBI agents, for dismissal under Rule 12 or for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defendants submitted affidavits on the issue, and the Magistrate Judge appropriately treated the motions as requesting summary judgment. Fed.R.Civ.P. 12(c). The motions of the Defendants will be addressed individually.

### A. James Lott.

Plaintiff claims that Defendant Lott violated his rights of association and privacy as guaranteed under the First and Ninth Amendments to the Constitution. Plaintiff also claims that Lott is liable as a co-conspirator with other agents who violated Plaintiff's Fourth and Fifth Amendment rights along with other federal rights. Plaintiff's claims were brought pursuant to the following: (a) *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which held that damages are recoverable for constitutional

---

1. Plaintiff need not present further papers or other evidentiary matter in opposition to Defendants' motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The absence of a genuine issue of fact in dispute has not been established by the moving party.

torts committed by federal agents (the *"Bivens* claim"); (b) 42 U.S.C. §§ 1985(3) and 1986, alleging conspiracy with other FBI agents, officials of the New York City Police Department, informants, and the media, to violate Plaintiff's constitutional rights; and (c) 42 U.S.C. § 1983, alleging conspiracy with members of the New York City Police Department.

Beginning in 1967 and ending during the Spring of 1973, Defendant Lott participated through COINTELPRO in the preparation of communications directed at the disruption of the Black Panther Party. Through the program, information was disseminated in an attempt to discredit the Black Panther Party and its members, and to impede its operations and activities. The communications were directed by FBI Headquarters. Also, Lott claims that he did not engage in field activities of COINTELPRO, such as surveillance and wiretapping.

### 1. *The Bivens Claim.*

Lott counters the *Bivens,* claim by arguing that he is entitled to a qualified immunity defense. He contends that the limits of permissible governmental conduct in interfering with the speech and association of groups such as the Black Panther Party were not clear in the late 1960's. Lott also argues that he could not reasonably have known that his compliance with FBI directives was unconstitutional. The Magistrate Judge found that the rights of groups like the Black Panther Party were clearly established at the time of Lott's actions. The Magistrate Judge also determined that there was an issue of fact as to the objective reasonableness of Lott's belief that his acts did not violate Plaintiff's rights. The Magistrate Judge recommended that summary judgment be denied to Defendant Lott on this issue.

Government officials may be able to escape liability for their discretionary acts on qualified immunity grounds. They "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This objective reasonableness is measured by reference to clearly established law, and permits insubstantial claims to be resolved by summary judgment. *Id.*

█ On a summary judgment motion based on qualified immunity grounds, the Court is to determine the law applicable to the claim, whether it was clearly established at the time of the action, and if Defendant should have known about it. *Id.* at 819, 102 S.Ct. at 2738. Even if the applicable law is clear, Defendant is entitled to qualified immunity if it was not clear at the time of the acts that an exception to that law did not permit those acts. *Robison v. Via,* 821 F.2d 913, 921 (2d Cir. 1987). Finally, Defendant is entitled to qualified immunity if it was objectively reasonable to believe that his acts under the circumstances did not violate Plaintiff's rights. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Krause v. Bennett,* 887 F.2d 362 (2d Cir. 1989); *Robison,* 821 F.2d at 921. The Court must look at the actions of Defendant in an objective light, and determine if he could reasonably have believed that his actions were lawful.

█ The Magistrate Judge concluded that the constitutional rights of speech and assembly were clearly established at the time of the COINTELPRO program. This Court agrees. Numerous Supreme Court cases established that the threat of violence or unlawful activity must be imminent, or present a "clear and present danger," before those activities could be disrupted. The mere advocacy of violence or unlawfulness is constitutionally protected. *See, e.g., Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (speech and assembly which advocate violence are protected except where directed at inciting or producing imminent lawless action); *Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (speech must create a clear and present danger to be unprotected; a group must be presently ready to act before its activities can be limited); *De Jonge v. Oregon,* 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937)

(rights of free speech and assembly are violated by the imposition of criminal punishment for participation in a public meeting by a group that *teaches* violence). *See also Hobson v. Wilson,* 737 F.2d 1, 27–28 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985) (listing line of Supreme Court cases which established constitutional right of association as of 1967). The government purpose must be narrowly effectuated so as not to interfere with protected constitutional rights while interfering with unprotected rights. *See Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). The activities in which Lott participated through COINTELPRO could reasonably be found to have disrupted the Plaintiff's and Black Panther Party's protected rights to speech and assembly.

The law in this area was established at the time of the alleged acts of the Defendant. It was not objectively reasonable for him to believe that his acts did not violate Plaintiff's rights. "An official does not have immunity ... where the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Piesco v. City of New York, Dep't of Personnel,* 933 F.2d 1149, 1160 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991) (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039). The law in the late 1960's was clear as it relates to the facts of this case. Defendant Lott is not entitled to summary judgment based on the qualified immunity defense. Summary judgment as to Defendant's activities in COINTELPRO is denied.

Defendant counters that he is still entitled to a qualified immunity defense because he obeyed the orders and directives

of superiors, and complied with FBI policy. Defendant uses as support for his argument a line of cases in which officials were relieved of personal liability where they justifiably relied on decisions by government attorneys.[2]

Magistrate Judge Gershon properly distinguished the instant case from the cases to which Defendant sought to analogize his situation. Here, Defendant relied on instructions from superiors within the FBI; in the former cases, the defendants relied on statements of government attorneys. The Court rejects application of these cases to the facts of the present case. The case at hand involves obedience to internal orders and directives.

▇▇▇ To allow one who obeys orders to escape liability for the direct violations of the constitutional rights of others would greatly narrow the effect of *Bivens.* The fact that one violates the constitutional rights of another because of the orders of superiors will not allow that person to avoid liability for those violations. Defendant's liability will be left for determination by the finder of fact.

### 2. *Conspiracy Claims.*

#### a. 42 U.S.C. § 1985(3).

Lott seeks summary judgment on the issue of his alleged involvement in a racially motivated conspiracy with other FBI agents, officials of the New York City Police Department ("NYCPD"), and others, to violate Plaintiff's constitutional rights. He also seeks summary judgment on the issue of his alleged failure to prevent violations of those constitutional rights. Defendant argues that he was merely a low-level agent acting in compliance with policy ap-

---

**2.** Defendant cites to *Arnsberg v. United States,* 757 F.2d 971, 981 (9th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); *Chagnon v. Bell,* 642 F.2d 1248, 1255 n. 9 (D.C.Cir.1980), *cert. denied,* 453 U.S. 911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981); and *Zweibon v. Mitchell,* 516 F.2d 594, 678–79 n. 12 (D.C.Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 1685, 48 L.Ed.2d 187 (1976) (Bazelon, C.J., concurring in part, dissenting in part). *Arnsberg* involved agents of the Internal Revenue Service who were granted qualified immunity when

they relied on an Assistant United States Attorney. *Chagnon* involved FBI agents who relied on decisions of the United States Attorney General, and were granted an immunity defense. Finally, Defendant relied on a portion of *Zweibon* which is not from the opinion of the court, and which Defendant concedes "left open the question of whether the individual defendants should be liable for [warrantless electronic surveillance]." Memorandum of Law in Support of Defendant James L. Lott's Rule 72(b) Objection to Magistrate's Recommendation, p. 20.

proved by the agency and his superiors. Further, he argues that the actions of employees of a single entity, here the FBI, should not be considered to constitute a civil conspiracy. In the April R & R, Magistrate Judge Gershon recommended that these arguments be rejected and that Defendant Lott's motion for summary judgment on this issue be denied.

Damages may be recovered against persons who act in furtherance of a conspiracy to interfere with civil rights. Such a conspiracy is statutorily defined as consisting of "two or more persons" who "conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The conspiracy is actionable "if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy," and if another is injured or deprived of "any right or privilege of a citizen of the United States." *Id.* Damages are recoverable "against any one or more of the conspirators." *Id.*

■ To recover on a § 1985(3) claim, plaintiff has the burden of proving that defendant: (1) engaged in a conspiracy; (2) acted for the purpose of depriving one of equal protection or equal privileges and immunities; (3) acted in furtherance of the conspiracy; and (4) deprived the person of the exercise of any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971); *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). Further, "[t]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus

behind the conspirators' action." *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798.

■ The Magistrate Judge found that Plaintiff presented sufficient evidence from which a jury could infer that Lott engaged in a conspiracy with other FBI agents to violate Plaintiff's constitutional rights. She further found sufficient evidence of Lott's purpose and intent, and of activities designed to "neutralize" the Black Panther Party and Plaintiff. The Magistrate Judge finally found that sufficient evidence was presented by Plaintiff to support a finding of class-based animus by Lott, and that this element was an issue of fact to be determined at trial.

Defendant argues that, as a matter of law, he cannot be liable for conspiring with other FBI agents because the FBI is a single entity involved in a single activity, and that he followed orders given from within that entity. This theory was enunciated in *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir.1972), where the court reasoned that the requirement of "two or more persons" in 42 U.S.C. 1985(3) is not satisfied where the challenged conduct is a single act reflective of a decision by "executives of the same firm," even if two or more persons engaged in that conduct.[3]

This rule has been applied in this circuit to various corporate/business entities. The primary case in the Second Circuit is *Girard v. 94th St. and Fifth Ave. Corp.*, 530 F.2d 66, 70–71 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976), which held that § 1985(3) does not apply to the implementation of a single policy by a single policy making body. That case involved a cooperative apartment corporation and its directors. This rule allows actors within a business entity to escape liability under § 1985(3).[4]

---

**3.** The Seventh Circuit also stated immediately after this reasoning that this does not mean that an agent's actions within the scope of his authority will always preclude a finding of conspiracy. *Dombrowski*, 459 F.2d at 196. For example, "[a]gents of the [Ku Klux] Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders from the Grand Dragon." *Id.* A

non-business entity may fall outside this single-entity rule.

**4.** *See, e.g., Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978) (law school, trustee, and faculty members incapable of conspiring); *Ritzie v. City Univ. of New York*, 703 F.Supp. 271, 277–78 (S.D.N.Y.1989) (university and employees); *McPartland v. American Broadcasting*

The defense that a single corporation and its employees cannot conspire under § 1985 is not always accepted where continuing, separate instances of discrimination are alleged. In *Yeadon v. New York City Transit Auth.*, 719 F.Supp. 204 (S.D.N.Y.1989), plaintiffs alleged wrongful arrest by transit authority police officers pursuant to a conspiracy between the officers, their supervisors, and the transit authority. The court held that plaintiffs "adequately alleged a series of separate discriminatory acts by the corporate entity and its agents." *Id.* at 212. *See also Rackin v. University of Pennsylvania*, 386 F.Supp. 992 (E.D.Pa.1974) (complaint alleged repeated, continuous discriminatory episodes); *Stathos v. Bowden*, 728 F.2d 15 (1st Cir.1984) (same). In the instant case, Plaintiff adequately alleges distinct and individual acts of discrimination.

Further, the "single corporate entity" rule does not apply to federal agencies as it does to business entities. If federal agencies were viewed as business entities, § 1985(3) would be ineffective to deal with potential conspiracies within the government. § 1985(3) is broad in its language, and relates to conspiracies by *"any* person." *Moriani v. Hunter*, 462 F.Supp. 353, 356 (S.D.N.Y.1978) (includes emphasis).

■ The Court, like Magistrate Judge Gershon before it, declines to apply the rule in *Girard* to federal agents and agencies. A federal agent is a "person" capable of conspiring to violate civil rights notwithstanding that he or she is an actor *within* an agency. *See Peck v. United States*, 470 F.Supp. 1003, 1008–12 (S.D.N.Y.1979) (conspiracy statute applies to federal officers); *Moriani*, 462 F.Supp. at 356 (same); *Hobson v. Wilson*, 737 F.2d 1, 19–20, 55 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985) (same). The scope of § 1985(3) shall not be narrowed by allowing federal agents to

escape liability under it. Agents are not as a matter of law incapable of conspiring under § 1985(3). Defendant's motion for summary judgment on this issue of a conspiracy between himself and other federal agents is denied.

The Magistrate Judge found no evidence of a § 1985(3) conspiracy between Defendant Lott and FBI informants and the media. Plaintiff has not objected to these findings by the Magistrate Judge. The R & R on this issue is adopted by this Court pursuant to Fed.R.Civ.P. 72. Summary judgment is granted in favor of Defendant Lott on the issue of a conspiracy between himself and FBI informants, and between himself and the media.

b. 42 U.S.C. § 1986.

If Defendant Lott was able to prevent the commission of a § 1985(3) conspiracy between himself and other FBI agents and failed to do so, he will face liability under § 1986. One who knows of and has the ability to aid in preventing a § 1985 conspiracy has a duty to do so. If that person declines to take steps preventing that conspiracy he or she shall be liable to the injured party for damages which could have been prevented. 42 U.S.C. § 1986.

Defendant contends that he was not a member of a conspiracy, and had no power to prevent one. Just as the existence of a conspiracy within the FBI between Lott and other agents is a finding of fact to be made at trial, the issue of whether Defendant participated in or could have prevented such a conspiracy, if one is found to exist, will be left for trial. The Magistrate Judge's R & R as to this issue is adopted, and Defendant's motion for summary judgment on this issue is denied.

c. Claims of Conspiracy Between Lott and Members of the NYCPD.

■ Finally, Defendant Lott seeks summary judgment on the issue of his alleged

*Companies, Inc.*, 623 F.Supp. 1334, 1340 (S.D.N.Y.1985) (corporation, directors, officers, and employees); *Gilliard v. New York Pub. Library Sys.*, 597 F.Supp. 1069, 1075 (S.D.N.Y. 1984) (library and its officers and employees); *Legal Aid Soc'y v. Association of Legal Aid Attorneys*, 554 F.Supp. 758, 766 (S.D.N.Y.1982) (un-

ion and its officials). While these cases provide much support for the single business entity rule, they all involve entities unlike the governmental entity in this case. The instant case is distinguishable as it involves a governmental agent and agency.

conspiring with members of the NYCPD in violation of 42 U.S.C. §§ 1983 and 1985(3). In the R & R, Magistrate Judge Gershon recommended that this part of Defendant's motion be granted because she found no sufficient evidence of a conspiracy between Lott and members of the NYCPD. This Court, however, does find evidence sufficient to create an inference of such a conspiracy, and will allow Plaintiff to proceed to trial on this issue.

There exists a genuine issue of material fact for resolution at trial. Plaintiff has provided evidence which allows the inference that agents of the FBI and members of the NYCPD acted in conjunction in carrying out activities, such as the FBI's "interview and arrest" program, in an effort to disrupt the Black Panther Party and Plaintiff in their exercise of lawful, constitutional activity. In correspondence dated April 15, 1969, to the Director of the FBI, the Special Agent in Charge of the New York Office of the FBI states that "arrests, of BPP [Black Panther Party] members have been made by Bureau Agents and the NYCPD. These interviews and arrests have helped to disrupt and cripple the activities of the BPP in the [New York City] area." Plaintiff's Appendix in Opposition to Defendants' Lott and Higgins Motion to Dismiss and/or for Summary Judgment, p. 60. Further, stolen information from a Black Panther leader was given to the FBI by someone from the NYCPD, and this information was investigated by agents including Defendant Lott. Plaintiff's Appendix, pp. 21–23. While this evidence is not dispositive of the issue of whether a conspiracy existed between agents of the FBI, including Lott, and members of the NYCPD, it does support an inference of mutual activity between the groups. "Mutually supportive activity by parties in contact with one another over a long period suggests a common plan." *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C.Cir.1983).

A jury determination of whether there is a conspiracy between Lott and members of the NYCPD is warranted. Plaintiff must prove a single agreement—the nature and scope of which was known to each conspirator sought to be held liable—to achieve certain unconstitutional or illegal objectives; however, each alleged conspirator need not know the identity of other conspirators or expressly agree with them. *See Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). "[T]here is a possibility that the jury can 'infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding' to achieve the" requisite objectives of a conspiracy. *Id.* at 621 (citing *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1608–09). While the Court leaves open the issue of whether Defendant conspired to violate Plaintiff's constitutional rights, the available evidence supports an inference that the NYCPD engaged in activity complementary to the efforts of the FBI, and that the activity went beyond the mere exchange of intelligence information. *Cf. Hobson*, 737 F.2d at 53. There is a triable issue of fact, and summary judgment as to this issue is denied.

Defendant has moved for summary judgment and has the burden of proving the lack of a dispute of material fact. *EEOC v. Home Ins. Co.*, 672 F.2d 252, 256 (2d Cir.1982) (citing *American Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 350 (2d Cir.1981)). Defendant responded to Plaintiff's pleadings, and Plaintiff countered with allegations of specific acts by Defendant Lott and the FBI which infer the existence of a conspiracy. Defendant Lott has not foreclosed the possibility of a conspiracy. Defendant has "failed to show conclusively that a fact alleged by [Plaintiff] was 'not susceptible' of an interpretation that might give rise to an inference of conspiracy." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 n. 22, 90 S.Ct. 1598, 1610 n. 22, 26 L.Ed.2d 142 (1970) (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). All doubts are resolved against the moving party, and all favorable inferences in favor of the party against whom summary judgment is sought. *Adickes*, 398 U.S. at 158–59, 90

**234**

S.Ct. at 1608–09. Defendant has not shown that summary judgment in his favor is warranted.

### 3. *Common Law Tort Claims.*

 Magistrate Judge Gershon determined that Defendant Lott acted within the scope of his employment, and that the remedy for certain of his alleged tortious activities lies exclusively in the Federal Tort Claims Act. 28 U.S.C. § 2679(b)(1). The Magistrate Judge recommends that this Court find Defendant Lott, a federal official, absolutely immune to state common law tort claims. Plaintiff has not objected to this recommendation, and the R & R is adopted by the Court pursuant to Fed. R.Civ.P. 72 as to this issue.

### B. John Higgins.

Magistrate Judge Gershon recommends that the complaint against Defendant Higgins be dismissed for lack of personal jurisdiction. The Magistrate Judge found that Plaintiff failed to allege sufficient ties between Higgins and New York to subject him to the jurisdiction of this Court. Plaintiff has not objected to this recommendation, and the R & R is adopted by the Court pursuant to Fed.R.Civ.P. 72 as to this issue.

### CONCLUSION

For the reasons stated above, the Report and Recommendation of October 11, 1991 is adopted in part and modified in part. Plaintiff's motions for sanctions and attorneys' fees are granted in part with modification. The motion of defendants Federal Bureau of Investigation, Attorney General of the United States, Director of the FBI, and "Richard Roe", representative of unnamed federal defendants, for summary judgment is denied.

Also for the reasons stated above, the Report and Recommendation of April 15, 1992 is adopted in part and declined in part. Defendant Lott's motion for summary judgment is granted to the extent of dismissing all common law tort claims, and

otherwise denied. Defendant Higgins' motion for summary judgment is granted.

It is SO ORDERED.