**Ometrius PEREZ, Plaintiff,**

v.

**The COUNTY OF WESTCHESTER, R. Nager, and Edward M. Herman, Defendants.**

**No. 96 Civ. 9487(MGC).**

United States District Court, S.D. New York.

Feb. 16, 2000.

David M. Goldberg, Fresh Meadows, NY, by David M. Goldberg, for Plaintiff.

Schiavetti, Geisler, Corgan, Soscia, De Vito, Gabriele and Nicholson, LLP, White

Plains, NY, by Steven H. Mutz, Michael P. Kelly, for Defendants.

## OPINION

CEDARBAUM, District Judge.

Ometrius Perez sues the County of Westchester and doctors Ralph Nager and Edward Herman in their official and personal capacities under 42 U.S.C. § 1983 for violating his rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Perez contends that he was mistreated in late 1994 and early 1995 while incarcerated at the Westchester County Jail. Defendants move to dismiss the Second Amended Complaint for failure to comply with the pleading requirements of Fed.R.Civ.P. 8(a) and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).[1] Dr. Nager and Dr. Herman move for summary judgment on the ground that their actions are protected by qualified immunity. Nager moves for dismissal on the ground that he was not properly served with process. Perez moves for reimbursement of the costs of personally serving Nager and Herman. For the reasons discussed below, defendants' motions to dismiss the municipal liability claims and for summary judgment are granted. The parties' motions with respect to service of process are denied.

## BACKGROUND

As will be explained more fully below, it is difficult to discern from any of the complaints exactly what Perez alleges to have happened while he was confined in the Westchester County Jail. All of the material facts are contained in a single paragraph of the Second Amended Complaint:

> From and after on or about December 13, 1994, until on or about February 13, 1995, defendants, their agents, servants and employees, did, without legal justifi-

cation therefor, and without plaintiff's consent and against his will, subject and cause plaintiff to be subjected to certain restraints and deprivations, in that they did, among other things, forcibly, unlawfully, intentionally, willfully, wantonly, recklessly and maliciously confine plaintiff, who was known to them then and there to be suicidal and to be suffering from adjustment disorder, depression, anxiety and claustrophobia, to a locked room for extensive periods of time; did deprive him of all of his personal property, including his clothing; did prohibit plaintiff from speaking to anyone, and from being spoken to by anyone, including members of the staff of the detention facility and the medical center; did prohibit plaintiff from sending or receiving correspondence, including written correspondence to and from attorneys; did prohibit plaintiff from making telephone calls; did deny him medical treatment for the depression, anxiety and claustrophobia from which he was then and there suffering; and did deny him access to law books and other legal materials.

(Compl.¶ 25.)

The initial complaint in this suit was dismissed pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because it "fail[ed] to allege a single fact from which to infer the existence of a policy or custom." *Perez v. County of Westchester*, No. 96 Civ. 9487(MGC), 1997 WL 256932, at *1 (S.D.N.Y. May 16, 1997) (opinion denying motion for reconsideration).

Perez submitted an amended complaint adding Dr. Herman and Dr. Nager as defendants. Perez' lawyer was advised in open court that the factual allegations in the amended complaint were still inadequate, and was directed to file a further amended complaint which "state[s] a plain, concise statement of the facts as to each of

---

1. Although the notice of motion invokes only Fed.R.Civ.P. 12(c) and 56, the accompanying memorandum of law makes clear that relief is in fact also sought under Fed.R.Civ.P. 8(a) and 12(b)(6).

the named defendants that constitutes a violation of the Constitution of the United States in this case." (Transcript of Proceedings, Sept. 11, 1998, at 21.)

Perez has submitted a Second Amended Complaint. Defendants once again move for dismissal.

## DISCUSSION

I. The complaint does not plead a policy or custom.

 A claim under § 1983 asserted against a municipality must allege that a deprivation of the plaintiff's constitutional rights resulted from a custom or policy of the municipality. *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Such a claim cannot be based on a theory of respondeat superior. 436 U.S. at 691, 98 S.Ct. at 2036. Additionally, "there must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993).

 Despite being advised by the Court of these requirements on at least three occasions, Perez' lawyer fails to adequately allege that Perez' rights were violated as a result of a custom or policy of the County of Westchester. The newest version of the complaint has merely been altered to include a conclusory, boilerplate statement that "[a]t all times hereinafter stated, defendants, their agents, servants and employees, were acting under color of law and pursuant to county policy and custom." (Compl.¶ 19.) The complaint does not include any facts demonstrating the existence of a policy or custom. The complaint does not even generally indicate the nature of the policy or custom being alleged, such as a failure to train county officers. This additional allegation, standing alone, is insufficient to state a claim of municipal liability. *See Dwares*, 985 F.2d at 100 ("The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.1980) (holding that a single incident can establish municipal liability in the absence of proof of a policy or custom only if it is "unusually brutal or egregious").

Perez argues that under the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), his complaint is only required to contain a bare assertion that the challenged action was taken pursuant to a municipal policy or custom without any indication of the nature of the policy or custom. This contention is without merit. *Leatherman* held only that complaints against municipal entities are not subject to a "heightened pleading standard" beyond the requirements of Fed.R.Civ.P. 8. *Id.* However, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Perez' claim, while short, is not plain, and provides no notice concerning the nature of the policy or custom under which defendants' actions were allegedly taken. Even under the liberal notice pleading standard set forth in *Leatherman*, the Complaint fails to adequately allege a policy or custom. *See Dwares*, 985 F.2d at 100–01; *Economic Opportunity Commission of Nassau County, Inc. v. County of Nassau, Inc.*, 47 F.Supp.2d 353, 370–71 (E.D.N.Y.1999) (granting motion to dismiss *Monell* claim because plaintiffs "do not proffer any facts in support of the conclusory allegation that the defendants' conduct amounts to a custom or policy, or that this custom or policy caused the plaintiffs' injuries"); *Morales v. New York City Police Department*, No. 97 Civ. 7151 MGC, 2000 WL 10436, at *2 (S.D.N.Y. Jan. 6, 2000) (holding that even under *Leatherman* "the plain-

tiff must still allege some facts that make possible the inference of a policy giving rise to municipal liability"); *Oparaji v. City of New York*, No. 96 Cv. 6233, 1997 WL 139160, at *3 (E.D.N.Y. Mar. 21, 1997), *aff'd*, 152 F.3d 920 (1998) (same); *Wilson v. 103rd Precinct*, No. CV 94 4447, 1996 WL 204510, at *1 (E.D.N.Y. Apr. 18, 1996), *aff'd*, 182 F.3d 902 (1999) (same). Accordingly, the complaint is dismissed with respect to the County of Westchester and defendants Herman and Nager in their official capacities.[2]

### II. Dr. Nager and Dr. Herman in their personal capacities are immune from suit.

Defendants Herman and Nager move for summary judgment on the ground that their actions are protected by qualified immunity. A motion for summary judgment will be granted when the moving party demonstrates that there are no triable issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Perez cites to no evidence in opposition to the motion. Summary judgment will thus be granted if the evidence offered by Herman and Nager demonstrates that they are entitled to qualified immunity. *See* Fed. R.Civ.P. 56(e); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996) ("conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment").

■ Qualified immunity shields government officials from liability for damages stemming from their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 531 (2d Cir. 1993). The defense will generally preclude liability unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Qualified immunity is designed "to relieve government officials of the burdens of litigation as well as of the threat of damages." *Ying Jing Gan*, 996 F.2d at 532; *see also Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Indeed, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Nevertheless, counsel for Perez contends that defendants' motion is premature because discovery has not yet commenced. A nonmoving party may request a continuance to permit discovery if facts essential to support opposition to a summary judgment motion are unavailable at the time of the motion. Fed.R.Civ.P. 56(f). However, Perez does not articulate any particular discovery that would provide information not now known by plaintiff with respect to the exercise of medical judgment by his doctors.[3] Moreover, Perez does not dispute any of the factual statements contained in the doctors' affidavits.

---

**2.** This conclusion carries additional force with respect to the individual defendants because *Leatherman* expressly left undecided the question of whether a "heightened pleading requirement" applies to claims against municipal employees in their official capacities. *Leatherman*, 507 U.S. at 166–67, 113 S.Ct. at 1162. Courts in this Circuit have held that such claims are subject to a more exacting pleading standard. *See Guzman v. Jacobson*, No. 97–CV–3385 (FB), 1999 WL 14667, at *3 n. 1 (E.D.N.Y. Jan. 11, 1999); *Covington v. City of New York*, 916 F.Supp. 282, 290 (S.D.N.Y.1996); *DeDiego v. City of New Britain*, No. 3:93CV00391 (TFGD), 1994 WL 70280, at *4 (D.Conn. Jan. 31, 1994).

**3.** In fact, Perez' attorney stated at oral argument that he possessed "two pounds of medical records" in support of his case. (Transcript of Proceedings, Mar. 26, 1999, at 3.)

Resolution of the motion at this time is thus in accordance with the admonitions of the Supreme Court.

■ Defendants' evidence in support of their motion shows that they did not violate any clearly established federal rights in their treatment of Perez. Herman and Nager submit affidavits explaining that they exercised their medical judgment when treating Perez during the time period at issue. They point out that Perez "made suicidal gestures" and that they placed him in the jail's Forensic Unit and "had him closely observed." (Nager Aff. ¶ 12; Herman. Aff. ¶ 9.) In defense of Perez' isolation for a period of close observation, Dr. Nager explains:

> Plaintiff ... twice made suicidal overtures by purported attempts to hang himself. Potentially suicidal patients are required, in the exercise of good medical and psychiatric practice, to be isolated for purposes of close observation. It is axiomatic that their activities must be restricted and observed for potential recurrence of the suicidal activity. They cannot have unrestricted access to others by way of socializing, correspondence, or telephone, while needing such a heightened level of observation.

(Nager Aff. ¶ 16.) Both doctors point out that clothing and other personal items such as belts and shoelaces are routinely removed to prevent their use in further suicide attempts. (Nager Aff. ¶ 17; Herman Aff. ¶ 14.) Furthermore, they state that to their knowledge, the law library cart made its rounds to the area in which Perez was located and that Perez had access to it. (Nager Aff. ¶ 18; Herman Aff. ¶ 15.) The medical records are consistent with the doctors' assertions.

With respect to Perez' release from medical isolation, Nager and Herman affirm that they exercised their best medical judgment "as to when close observation no longer appeared medically necessary, indicated, or sound." (Nager Aff. ¶ 12; Herman Aff. ¶ 9.) Once Perez was discharged from close observation, he "necessarily returned to the correction facility personnel who decided where he would be detained." (Nager Aff. ¶ 13; Herman Aff. ¶ 10.)

■ Perez does not dispute defendants' showing that he was placed in medical isolation because he was believed to have attempted suicide and was considered a danger to himself. Nor does he dispute that he was eventually released to the custody of other prison officials once the doctors no longer considered him to be a danger to himself. This action is, at its core, a claim of medical malpractice.[4] Because Perez disagrees with his diagnosis and treatment, and because he was diagnosed and treated while incarcerated in a county jail, he asserts that he states a claim under federal law. However, his doctors' conduct cannot be said to be contrary to clearly established federal rights. "The decisions of physicians regarding the care and safety of patients are entitled to a presumption of correctness." *Kulak*, 88 F.3d at 77. *Cf. Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (holding in the Eighth Amendment context that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Accordingly, summary judgment of qualified immunity is warranted for Dr. Herman and Dr. Nager in their individual capacities. *See Richardson v. Nassau County Medical Center*, 840 F.Supp. 219, 221–222 (E.D.N.Y.1994) (finding physicians immune where plaintiff was involuntarily confined); *Katzman v. Khan*, 67 F.Supp.2d 103, 109–10 (E.D.N.Y.1999) (same); *Kulak*, 88 F.3d at 77 (finding physicians immune where plaintiff was not informed of the risks related to certain medications and was segregated for his own safety).

---

4. Perez makes this especially apparent by relying on state medical malpractice cases and New York City agency policies in his memorandum of law. (Pl. Mem. at 13–14, 19–21.)

## III. Service of process

Dr. Nager moves for dismissal on the ground that he was not properly served with process. It is undisputed that the summons and complaint were delivered by hand to a secretary at Dr. Nager's office. However, Nager correctly points out that this is insufficient to satisfy the requirements of Fed.R.Civ.P. 4(e), which allows service upon a person of suitable age and discretion only at an individual's home, not at his or her place of employment. The question presented is thus whether the service complied with N.Y. Civ. Prac. L. & R. 308(2) (McKinney 1999). *See* Fed.R.Civ.P. 4(e) (allowing service of process according to either federal law or the law of the state in which the district court sits).

Section 308(2) permits delivery of a summons to a person of suitable age and discretion at a person's place of employment. It requires, however, that a copy of the summons be mailed to the person's residence or place of business within twenty days of the personal delivery. Nager claims that he never received a copy of the summons and complaint by mail. Counsel for Perez asserts that he mailed Nager these documents contemporaneously with the delivery to Nager's business.

Nager received sufficient service of process under section 308(2). Even if his denial of receipt by mail is credited, counsel for Perez nonetheless complied with the requirements of the provision, and Nager received the copy delivered to the secretary at his office. The purpose of requiring duplicated service is to ensure that the summons reaches the defendant. This purpose was satisfied here, and Nager's motion to dismiss for insufficient service of process is accordingly denied.

Perez moves for reimbursement of the $80 paid for personal service on Nager and Herman and for an attorney's fee for the time spent preparing this motion. In support, he refers to Fed.R.Civ.P. 4(d), which requires that defendants pay the costs of service where they do not comply with a proper notice and request for a waiver of personal service. Although it is true that defendants refused to waive personal service on advice of counsel, plaintiff's notice and request did not comply with the requirements of Rule 4(d). The only request for waiver of personal service was made by Perez' lawyer in a letter to defense counsel. Rule 4(d), however, requires, among other things, that the notice and request be addressed directly to the defendant, that it be accompanied by a copy of the complaint, and that it include a prepaid means of compliance in writing. None of these requirements was met. Accordingly, plaintiff's motion for reimbursement of service costs and for an attorney's fee is denied.

## CONCLUSION

For the foregoing reasons, Nager's motion to dismiss for improper service of process is denied. Plaintiff's motion for reimbursement of service costs and an attorney's fee is denied. Defendants' motion to dismiss the Second Amended Complaint pursuant to Fed.R.Civ.P. 8 and 12(b)(6) is granted with respect to the County of Westchester and Ralph Nager and Edward Herman in their official capacities. Defendants' motion for summary judgment on the ground of qualified immunity is granted with respect to Nager and Herman in their personal capacities.

Accordingly, this action is dismissed.

SO ORDERED.