**Denise R. SMITH, Plaintiff,**

v.

**The CITY OF NEW YORK, Detective Melvin Carter, and Other Unnamed Police Officers, Defendants.**

**No. 03 CV 238(JG).**

United States District Court,
E.D. New York.

Sept. 23, 2003.

---

Pamela D. Hayes, New York City, for Plaintiff.

Zachary A. Cunha, Corporation Counsel of the City of New York, New York City, for the City of New York.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

Plaintiff Denise Smith has filed this action against the City of New York (the "City") and Detective Melville Carter and other unnamed police officers. She alleges a conspiracy to intimidate her into refraining from filing a cross-complaint in a criminal case, in violation of 42 U.S.C. § 1985(2) and (3). (Compl.¶¶ 17–19.)[1]

The City moves to dismiss Smith's complaint against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

## BACKGROUND

The following facts are relevant for purposes of this motion. I assume that all of the below facts are true, as I must in deciding this motion. *See Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995) (on a 12(b)(6) motion, the court must accept as true the factual allegations in the complaint and view the complaint in a light most favorable to the non-moving party).

Plaintiff Smith is a 33–year–old African–American lesbian. (Compl.¶ 4.) In January 2001, Smith was in a police precinct to receive a "desk appearance ticket" for a charge of criminal trespass that had been filed by her former lover. (*Id.* ¶ 9.) She received the desk appearance ticket from Detective Nardi. When she was waiting for it, Detective Carter asked her why she was there. He then said: "You're just like man, you're stupid. Well I'm not going to say all that, if I see a big butt I'll spend some money. You need a man, you shouldn't be gay. My sister is gay ... what is it about being gay? Is it the sex?" Plaintiff told him that it was not the sex, at which point Detective Carter left the room, saying he was going to get her records. (*Id.* at ¶ 10.) Upon his return, Detective Carter asked Smith if she was a singer, and then said, "It's about the sex and when was the last time you had sex with the complaining witness." (*Id.* at ¶ 11.) Plaintiff, who felt compelled to answer, said it was three or four months earlier.

---

[1]. In her reply brief, Smith has conceded that she has failed to state a claim with respect to Count Two, in which she asserts that the defendants' conduct also violates her rights under § 1981 and Title VII of the Civil Rights Act of 1964. (*See* Pl.'s Resp. Opp. Def's Mot. at Point Two).

(*Id.*) The other police officers who were standing nearby began to laugh, and did not do anything to help Smith. Detective Carter gave Smith his business card with his home telephone number on it. (*Id.*) Three to five days later, Detective Carter called Smith at home to ask her on a date. (*Id.* at ¶ 12.)

Smith alleges that she was afraid to file a cross-complaint against her former lover because she feared that Detective Carter would interfere in the process and that he could use his status as a officer to harm her since he knew her telephone number and her address. (*Compl.* ¶ 14.) Smith further alleges that Detective Nardi would not take her cross complaint. (*Id.* at ¶ 15.)

## DISCUSSION

### A. The Standard for a Motion to Dismiss Under Rule 12(b)(6)

Dismissal under Rule 12(b)(6) may be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992) (citation omitted). A federal court's task in determining the sufficiency of a complaint is "necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683,

40 L.Ed.2d 90 (1974). The appropriate inquiry is not whether the plaintiff might ultimately prevail on her claim, but whether she is even entitled to offer any evidence in support of the allegations in the complaint. *Id.* In this inquiry, I may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or documents either in plaintiff[']s[ ] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)).[2]

### B. The § 1985 Claim

Section 1985(2) prohibits, in relevant part, "two or more persons conspir[ing] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws." Similarly, § 1985(3) prohibits a conspiracy "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[3]

---

**2.** Smith has submitted, along with her brief, Plaintiff's Affidavit in Response in Opposition to Defendant's Motion. (*See* Pl.'s Resp. Opp. Def.'s Mot., Ex. A). In this Affidavit, Smith essentially repeats what she alleges in her complaint, albeit more coherently. She also seems to allege a new cause of action, that being a violation of her right to privacy under the Fourth Amendment, which she asserts was violated when Detective Carter accessed her sealed personal record to obtain her telephone number and address. *I do not consider* this affidavit because I will not convert this motion into one for summary judgment, and in a 12(b)(6) motion, I cannot consider this extraneous document. *See Bennett v. Cardinal Health Marmac Distribs.*, No. CV 02–

3095, 2003 WL 21738604, at \*2 (E.D.N.Y. July 14, 2003) (general rule is that in 12(b)(6) motion, court cannot consider material not in the pleadings, such as affidavits submitted by plaintiff). Even if I were to consider it, however, it would not change the ultimate disposition of this motion, for the reasons I explain below.

**3.** Sections 1985(2) and (3) provide, in their entirety, as follows:

(2) Obstructing justice; intimidating party, witness, or juror
If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in

As noted earlier, Smith alleges a conspiracy under § 1985 on the theory that "Detective Melvin Carter [o]bstructed [j]ustice when he and Detective Nardi allowed Plaintiff to be intimidated and humiliated, and thereby intimidated her in not filing a cross complaint which she would have been allowed to do." (Compl.¶ 17.) According to plaintiff, this conduct "chilled [her] rights ... in not filing a cross complaint against the complaining witness who had her arrested. Detective Nardi and [another police officer] who was [sic] present and over heard what Detective Carter said and saw what he was doing, and failed to stop Defendant Carter from violating Plaintiff's rights." (*Id.* at ¶ 18.)

The City argues first that the complaint is insufficient because none of the alleged actions or statements of Detective Carter have anything to do with filing a cross-complaint, and there is no allegation of an agreement to prevent Smith from filing a cross-complaint. (Def.'s Mem. Law Supp. Mot. Dismiss Compl. at 6.) Second, the City argues that under the intra-corporate conspiracy doctrine, Smith's claim is barred because members of a single entity, in this case the City, cannot conspire with that entity or in their capacity as members of the entity. (*Id.* at 7.) Third, the City claims that Smith's claims must be dismissed because she has failed to allege conduct that deprived her of a protected right of judicial access or equal protection of the laws, arguing that one does not have a constitutional interest in the prosecution of another. (*Id.* at 7–8.) Fourth, the City maintains that Smith cannot properly claim that she has been deprived of equal protection based upon her gender or sexual orientation because her former lover, who is also a lesbian, was apparently able to file a complaint against Smith without

any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;
(3) Depriving persons of rights or privileges If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

difficulty. (*Id.* at 11.) The City also asserts that under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it cannot be liable for damages because Smith has failed to allege the existence of a policy, custom, or practice that caused a deprivation of her constitutional rights.

I conclude that Smith has not properly alleged a policy, practice or custom of the City pursuant to which the other defendants intimidated her or otherwise violated her rights. I therefore need not address the City's other arguments.[4]

■■■ A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior. *Monell*, 436 U.S. at 691, 694, 98 S.Ct. 2018. In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of her constitutional rights resulted from a municipal custom or policy. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–79, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The same requirements apply to a claim for municipal liability under § 1985. *See Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir.1979); *see also, e.g., LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir.1995) (explaining that the term "persons" for purposes of § 1985(3) includes municipalities) (citing *Owens*, 601 F.2d at 1247); *Davis v. Town of Hempstead*, 208 F.3d 202, 2000 WL 268571 (2d Cir.2000) (summary order) ("A county or municipality is liable under Section 1983 or Section 1985 only if the constitutional injury resulted from a governmental policy, practice, or custom."); *Lucas v. New York City*, No. 95 Civ. 0854, 1995 WL 675477, at *4 (S.D.N.Y. Nov. 14, 1995) (same).

The Second Circuit has stated that while a plaintiff need not show that the municipality has an explicitly stated rule or regulation, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991). The court further explained that "[w]hat is a proper-

---

4. I do note, however, that the plaintiff's claims appear to be barred under the corporate conspiracy doctrine, according to which members of a single entity cannot be found to have conspired together with such entity or with each other in their capacity as members of the entity. *See, e.g., Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978) (applying corporate conspiracy doctrine to conspiracy alleged to have occurred between a law school, its trustees and members of the faculty); *Linder v. City of New York*, 263 F.Supp.2d 585, 591 (E.D.N.Y.2003) (following *Herrmann*, held no § 1985 claim where conspirators were all employees of the Board of Education); *Salgado v. City of New York*, 2001 WL 290051, at *9 (S.D.N.Y. Mar. 26, 2001) (holding that because all individual defendants are officers, agents and employees of the City of New York, plaintiff's § 1985(3) claim is barred under the intra-corporate conspiracy doctrine); *Roniger v. McCall*, 72 F.Supp.2d 433, 437–440 (S.D.N.Y.1999) (explaining doctrine and applying it to § 1985 suit against two employees in the Comptroller's office); *but see Wahad v. FBI*, 813 F.Supp. 224, 232 (S.D.N.Y.1993) (intra-corporate conspiracy doctrine not applicable to federal agencies because otherwise, § 1985 litigation would be ineffective to deal with potential conspiracies in federal government; a federal agent is a "person" capable of conspiracy).

Even though it is based solely on the discrete events occurring on one day, Smith's complaint also nominally seeks an injunction enjoining defendants from engaging in any violation of her civil rights and engaging in sexual harassment based on gender and sexual orientation. (*See* Compl. at ¶¶ 25–28.) In this regard, her complaint is dismissed as against the City because it is barred under the intra-corporate conspiracy doctrine.

ly 'short and plain' pleading depends, of course, on the circumstances of the case and the nature of the claim, and [ ] prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory." *Ricciuti*, 941 F.2d at 124. *See also Dwares v. City of New York*, 985 F.2d 94, 100–01 (2d Cir.1993) (stating, in granting a motion to dismiss municipal liability claim because plaintiff did not allege any facts to suggest the existence of a custom or policy other than the one instance complained of, that "[t]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").

For instance, in *Perez v. County of Westchester*, 83 F.Supp.2d 435 (S.D.N.Y. 2000), the complaint at issue did not include any facts demonstrating the existence of a policy or custom; it merely alleged "a conclusory, boilerplate statement that '[a]t all times hereinafter stated, defendants, their agents, servants and employees, were acting under color of law and pursuant to county policy and custom.'" *Perez*, 83 F.Supp.2d at 438. The court held that this statement could not withstand a motion to dismiss because "[t]he complaint does not include any facts demonstrating the existence of a policy or custom" nor did it "even generally indicate the nature of the policy or custom being alleged, such as a failure to train county officers." *Id. See also Economic Opportunity Comm'n of Nassau County, Inc. v. County of Nassau, Inc.*, 47 F.Supp.2d 353, 370 (E.D.N.Y.1999) (granting motion to dismiss *Monell* claim because plaintiffs "d[id] not proffer any facts in support of the conclusory allegation that the defendants' conduct amounts to a custom or policy, or that this custom or policy caused the plaintiffs' injuries"); *McDermott v. City of New York*, No. 94 CV 2145, 1995 WL 347041, at *6 (E.D.N.Y. May 30, 1995) ("While it is recognized that plaintiff need not prove his claims through his pleadings since much of the proof will be developed in the discovery process, a § 1983 complaint will not stand on the basis of vague and conclusory assertions.") (citing *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987)) (internal citation omitted).

Here, plaintiff's only assertion of a municipal policy or custom is as follows: "The practices and policies of the New York City Police Department discriminated against Plaintiff with respect to the rights and privileges of citizenship." (Compl. ¶ 23.) This allegation is wholly conclusory, and indeed, it bears a striking resemblance to the "boilerplate statement" that was rejected as such in *Perez*.

■ Plaintiff's arguments to the contrary do not counsel otherwise. She cites *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), for the proposition that her complaint need only contain a bare assertion that the challenged action was taken pursuant to a municipal policy or custom in order to properly allege a *Monell* claim. (Pl.'s Resp. Opp. Def.'s Mot.) *Leatherman* does not support that proposition; it held only that complaints against municipal entities are not subject to a "heightened pleading standard" beyond the requirements of Rule 8—"a short and plain statement of the claim showing that the pleader is entitled to relief." *Perez*, 83 F.Supp.2d at 438 (explaining that *Leatherman* does not allow for a "bare assertion" that the offensive behavior was taken pursuant to a municipal policy or custom without any indication concerning the nature of the policy or custom).

At oral argument, Smith's argument on her *Monell* claim took a slightly different

form. Quoting from the City of New York's administrative code, she contended that the Police Department indeed had a policy *against* the conduct she alleges. (Sept. 12, 2003 Tr. at 17–18.) When the conflict between that argument and Smith's *Monell* claim was brought to counsel's attention, counsel asserted that the *Monell* claim was premised on a custom or policy of not sufficiently apprising officers of the department's policies. (Tr. at 21.) That conclusory assertion is insufficient to state a claimed violation of § 1985 against the City.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint as against the City is granted.

So Ordered.